# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

------------------------------X

PATRICIA A. HOEY,

     Plaintiff,

v.                          Civil No. 3:03CV00713 (AWT)

JOHN E. POTTER,
POSTMASTER GENERAL,
UNITED STATES POSTAL SERVICE,

     Defendant.

------------------------------X

### RULING ON MOTION FOR SUMMARY JUDGMENT

_____The plaintiff, Patricia Hoey ("Hoey"), brings this action against John Potter, Postmaster General, United States Postal Service, pursuant to the Rehabilitation Act of 1973, 29 U.S.C. § 701 et seq., and the Americans with Disabilities Act("ADA"), 42 U.S.C. §§ 12101, et seq.  Hoey alleges discrimination on the basis of her severe hearing impairment.  The defendant has moved to dismiss this action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, or, in the alternative, for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.  For the reasons set forth below, the defendant's motion for summary judgment is being granted.

## I.  FACTUAL BACKGROUND

     The plaintiff, who is hearing impaired, began working for the defendant in 1977, as a clerk in the Stamford Processing Center.  The plaintiff claims that she was harassed by co-workers

as a result of her hearing disability on several occasions in 1998.  The plaintiff asserts, without providing evidence, that the harassment continued through 2000.

On March 19, 1998, the plaintiff was the subject of condescending and disparaging remarks by two other employees, Dob Cuzino and Lisa McCalaster.  Hoey claims Cuzino and McCalaster shut off the machine on which the plaintiff was working and called her "stupid."  (Compl. Attach. at 5.)  In accordance with a suggestion made by supervisor John Winiski, the plaintiff filed a complaint with the Plant Manager, Richard Bryant.  Although the plaintiff's memorandum argues that she also informed the Administrator Supervisor, Harry Abbott, about this incident, the plaintiff fails to furnish evidence in support of this claim.

The plaintiff claims that she also experienced harassment on April 10, 1998.  McCalaster made lewd and obscene gestures in the direction of Hoey by moving up and down on McCalaster's chair, "as if she was having sex." (Id. at 6.)  McCalaster also called Hoey and another co-worker, Camille Smuminski, "[s]imple and simpler" as well as "dumb and dumber;" Smuminski has no disability.  (Id.) As a result, Hoey gave Bryant a written complaint, and Bryant then reported the incident to Abbott.  In response, Abbott instructed McCalaster's manager, Walter Noel, to formally discuss the plaintiff's complaint with McCalaster and gave her a Zero Tolerance talk.  Noel carried out these

2

instructions by April 13, 1998.

On May 8, 1998, McCalaster continued to harass Hoey. McCalaster said to the plaintiff, "[w]hat the [f]--- are you looking at?" and "[m]ind your own [f]--- business." (<u>Id.</u>) Hoey believes McCalaster made these comments because she thought Hoey was lip-reading.  In response to this encounter, another co-worker, Joan Field, took McCalaster to the other end of the machine.  Supervisor Paula Moore then took McCalaster off the floor to counsel her about the incident.  Abbott requested Moore's notes regarding this incident and held a Zero Tolerance meeting for all employees on the flat sorter machine.

The plaintiff claims that on August 3, 1998 and September 1, 1998 she was wrongly pulled out of training sessions she was running and ordered to go back to work.  The plaintiff speculates that Noel removed her from the training sessions because of a telephone call he received from McCalaster, but the plaintiff furnishes no evidence to support this assertion.  In addition, Moore said she was tired of filling out Hoey's 1260 form, which was the alternative to punching out for lunch.  Although the plaintiff's memorandum argues that she wrote a complaint regarding this conduct, Abbott was never informed of any such incidents.

The plaintiff claims that in December of 1998, McCalaster was "eye balling" her. (<u>Id.</u> at 7.)  However, there is no evidence

that the plaintiff notified her supervisor of this incident.

The plaintiff also claims that an additional instance of harassment occurred on an unspecified date.  The plaintiff asserts that the incident occurred in the ladies room, where McCalaster yelled out loud behind the plaintiff's back, causing other workers to laugh.

In addition, on July 23, 1999, Hoey filed a union grievance.

## II.  <u>LEGAL STANDARD</u>

A motion for summary judgment may not be granted unless the court determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the moving party as a matter of law.  Fed. R. Civ P. 56(c).  <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323-34 (1986); <u>Gallo v. Prudential Residential Servs.</u>, 22 F.3d 1219, 1223-24 (2d Cir. 1994).  When ruling on a motion for summary judgment, the court may not try issues of fact, but must leave those issues to the jury.  <u>See, e.g.</u>, <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986); <u>Donahue v. Windsor Locks Bd. of Fire Commissioners</u>, 834 F.2d 54, 58 (2d Cir. 1987).  Thus, the trial court's task is "carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them.  Its duty, in short is . . . to issue-finding; it does not extend to issue-resolution." <u>Gallo</u>, 22 F.3d at 1224.

4

Summary judgment is inappropriate only if the issue to be resolved is <u>both</u> genuine <u>and</u> related to a material fact. Therefore, the mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. An issue is "genuine . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Anderson</u>, 477 U.S. at 248 (internal quotation marks omitted). A material fact is one that would "affect the outcome of the suit under the governing law." <u>Anderson</u>, 477 U.S. at 248. Only those facts that <u>must</u> be decided in order to resolve a claim or defense will prevent summary judgment from being granted. Immaterial or minor facts will not prevent summary judgment. <u>Howard v. Gleason Corp.</u>, 901 F.2d 1154, 1159 (2d Cir. 1990).

When reviewing the evidence on a motion for summary judgment, the court must "assess the record in the light most favorable to the non-movant and . . . draw all reasonable inferences in its favor." <u>Weinstock v. Columbia Univ.</u>, 224 F.3d 33, 41 (2d Cir. 2000) (quoting <u>Delaware & Hudson Ry. Co. v. Consolidated Rail Corp.</u>, 902 F.3d 174, 177 (2d Cir. 1990)). However, the inferences drawn in favor of the nonmovant must be supported by the evidence. "[M]ere speculation and conjecture" is insufficient to defeat a motion for summary judgment. <u>Stern v. Trustees of Columbia Univ.</u>, 131 F.3d 305, 315 (2d Cir. 1997)

(quoting <u>W. World Ins. Co. v. Stack Oil, Inc.</u>, 922 F.2d 118, 121
(2d Cir. 1990)).  Moreover, the "mere existence of a scintilla of
evidence in support of the [nonmovant's] position" will be
insufficient; there must be evidence on which a jury could
"reasonably find" for the nonmovant.  <u>Anderson</u>, 477 U.S. at 252.

## III.  <u>DISCUSSION</u>

To establish a claim based on a hostile work environment,
there must be evidence showing that the plaintiff's work
environment was "so severely permeated with discriminatory
intimidation, ridicule, and insult that the terms and conditions
of her employment were thereby altered" and that the harassment
was due to the plaintiff's disability.  <u>Alfano v. Costello</u>, 294
F.3d 365, 373 (2d Cir. 2002) (See also for discussion regarding
hostile work environment in Title VII context.); <u>see also</u> <u>Reg'l
Econ. Cmty. Action Program, Inc. v. City of Middletown</u>, 294 F.3d
35, 48—49 (2d Cir. 2002) (stating "[w]e analyze claims of
intentional discrimination under the FHA, the ADA, and the
Rehabilitation Act under the . . . analysis established for
employment discrimination cases under Title VII of the Civil
Rights Act of 1964, 42 U.S.C. § 2000e <u>et</u> <u>seq.</u>").  The work
environment must be both objectively and subjectively hostile.
<u>Harris v. Forklift Sys., Inc.</u>, 510 U.S. 17, 21 (1993).  Thus,
"conduct that is not severe or pervasive enough to create an
objectively hostile or abusive work environment — an environment

that a reasonable person would find hostile or abusive . . . " is
not actionable.  <u>Id.</u>

In evaluating whether the threshold of a hostile work
environment has been reached, the fact finder assesses "the
frequency of the discriminatory conduct; its severity; whether it
is physically threatening or humiliating, or a mere offensive
utterance; and whether it unreasonably interferes with an
employee's work performance."  <u>Id.</u> at 23.  "'The mere utterance
of an . . . epithet which engenders offensive feelings in an
employee does not sufficiently affect the conditions of
employment to implicate [the ADA]' <u>Schwapp[ v. Town of Avon</u>], 118
F.3d [106,] 110 [(2d Cir. 1997)] citing <u>Harris v. Forklift Sys.</u>
<u>Inc.</u>, 510 U.S. 17, 21 . . . (1993)."  <u>Distasi v. Sikorsky</u>
<u>Aircraft Corp.</u>, No. 3:99CV00383 (EBB), 1999 U.S. Dist. LEXIS
18941, at *10 (D. Conn. Nov. 29, 1999).  Additionally, the
offensive incidents must be "more than episodic; they must be
sufficiently continuous and concerted in order to be deemed
pervasive."  <u>Faragher v. City of Boca Raton</u>, 524 U.S. 775, 787
n.1 (1998)(internal quotation marks and citations omitted).

Here, the instances of alleged harassment are not
sufficiently severe or pervasive to constitute an objectively
hostile work environment.  Hoey identified several isolated
incidents that she claims created a hostile working environment,
including: the "stupid" remark on March 19, 1998; lewd and

obscene gestures and disparaging comments on April 10, 1998; the statements on May 8, 1998; her being removed from training in August 1998; the "eye balling" incident in December 1998; and the confrontation in the bathroom. (Compl. Attach. at 7.) However, while this conduct is certainly offensive and inappropriate there is a high degree of dissimilarity between the instances of alleged harassment and the incidents are merely episodic. Therefore, the alleged harassment is not sufficiently severe or pervasive as to amount to a hostile work environment.

In addition, although Hoey claims the offensive behavior was because of her severe hearing impairment, she fails to produce evidence that could support a reasonable inference that the offensive behavior is due to her disability. The plaintiff identifies only one incident that arguably has any connection to her hearing impairment, i.e. the encounter during which McCalaster said "[w]hat the [f]--- are you looking at?" when Hoey was lip-reading; but even that is based solely upon the plaintiff's speculation that McCalaster's action was based on Hoey's disability. (Id. at 6.) Hoey did not present any evidence that could link the other alleged incidents of harassment to her disability. While there is a series of incidents occurring in 1998, they are spread out so many months that they can not support a reasonable inference that the plaintiff's work environment was so severely permeated by

discriminatory intimidation such that the terms of her employment were altered.  This is so even if one does not consider the remedial actions taken by the employer.  In fact, the "[s]imple and simpler" and "dumb and dumber" comments by McCalaster were also made to Camille Smuminski, a fellow employee who has no record of disability, which tends to suggest only that McCalaster picked on people regardless of whether they had a disability. (Id.)

The evidence proffered by the plaintiff falls short of being able to support a conclusion that she was subjected to discrimination based on her disability, both because the instances of alleged harassment do not create a hostile work environment and because the evidence proffered by the plaintiff does not support a reasonable inference that the offensive behavior was due to the plaintiff's disability.

**IV.  CONCLUSION**

For the reasons set forth above, Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment (Doc. No. 20a) is hereby GRANTED, and summary judgment is hereby granted in favor of the defendant on all claims.

The Clerk shall close this case.

9

It is so ordered.

Dated at Hartford, Connecticut on this 29th day of March 2005.

                                    /s/

                    _____
                         Alvin W. Thompson
                    United States District Judge